## MAYOR AND CITY COUNCIL OF BALTIMORE v. JOSEPH N. BOWEN, JR.

[No. 1062, September Term, 1982.]

*Decided April 14, 1983.*

The cause was argued before GILBERT, C. J., WILNER and BLOOM, JJ.

*John J. Carlin, Assistant Solicitor of Baltimore City,* with whom were *Benjamin L. Brown, City Solicitor of Baltimore City,* and *Sheldon H. Press, Chief Solicitor of Baltimore City,* on the brief, for appellant.

*William H. Engelman,* with whom were *Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A.* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

This began as a workmen's compensation case. The judicial phase of it commenced when claimant's counsel, dissatisfied with the fee awarded them by the Workmen's Compensation Commission, appealed to the Superior Court of Baltimore City seeking an order directing the Commission to award them a higher fee. The court was more than obliging; it not only ordered that the Commission award the higher fee sought by counsel, it also ordered the Commission to recalculate the underlying compensation award, which no one had asked it to do. The employer — the Mayor and City Council of Baltimore — feels aggrieved and thus has brought this appeal.

## The Legal Setting

To understand the issues presented to us, we must examine the interplay among the following provisions of the State's workmen's compensation law (Md. Code Ann. art. 101):

(1) By virtue of § 21 (a) (2) and (b) (4) of art. 101, firefighters employed by the Baltimore City Fire Department are employees covered by the workmen's compensation law.

(2) Section 36 (4), captioned "Other cases," provides that, if an eligible employee suffers a compensable permanent partial disability other than of a type specifically enumerated in § 36 (3), the Workmen's Compensation Commission (a) "shall determine the portion or percentage by which the industrial use of the employee's body was impaired as a result of the injury," and (b) "shall award compensation in such proportion as the determined loss bears to 500 weeks, the said compensation to be paid weekly at the rate of [2/3] of the [employee's] average weekly wages, in no case to exceed [1/3] of the State average weekly wage as determined by the Department of Employment Security."

(3) Section 36 (4a) provides that, if, under § 36 (4), a person receives from one accident an award for 250 weeks or more, he is regarded as having a "serious disability." In that event, "[t]he weeks for such award shall be increased by one-third" and "the compensation shall be for [2/3] of the [State] average weekly wages. . . ."

(4) Section 33 (c) provides that, if an employee (such as a Baltimore City firefighter) is covered under the Workmen's Compensation Act by virtue of § 21 (a) (2), and his public employer provides retirement or disability benefits to him, "the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer . . . for any benefit under this article."

However:

(5) Section 64A (a) provides that any impairment of the health of a firefighter caused by certain specific conditions, including heart disease, which results in total or partial disability "shall be presumed to be compensable under this article"; and

(6) Section 64A (b) provides that, in such a case, the firefighter

"shall receive such benefits as are provided for in this article *in addition to such benefits as he may be entitled to under the retirement system* in which said fire fighter . . . was a participant at the time of his claim. The benefits received under this article, however, shall be adjusted so that the *total of all weekly benefits shall not exceed one hundred percent of the weekly salary which was paid to said fire fighter. . . ."* (Emphasis supplied.)

And finally:

(7) Section 57 places the charging and collection of attorneys' fees in compensation cases under the control of the Workmen's Compensation Commission. An attorney may not collect a fee "unless the same be approved by the Commission," which has "full power to hear and determine any and all questions which may arise concerning legal services rendered in connection with any claim under this article. . . ." Pursuant to that authority, the Commission has adopted a "Statement Of Policy For Approval Of Attorneys' Fees" which is "to be used as a guide in determining the allowance and approval of attorneys' fees." Under the Statement of Policy, "maximum fees" for permanent partial cases are set as amounts "not to exceed" 20% of the first $7,000 of award, 15% of the amount of award between $7,000 and $25,000, and 10% of the amount of award exceeding $25,000.

## Factual Background

Joseph Bowen was a firefighter employed by the Baltimore City Fire Department, having served in that capacity since 1959. On January 11, 1978 — near the end of a four-day tour of duty during which he was involved in some strenuous firefighting activity — he began to experience mild chest pains. The pain continued, and worsened, over the next two days; and, on January 13, he was admitted to the hospital where he was found to have "active coronary artery disease." He never returned to active firefighting duty,

although he performed some limited light duty service for two weeks in May, 1978.

At the time of his cessation of active service in January, 1978, Bowen's average weekly wage was $287. In May, 1978, he filed for a special disability pension under the City's Fire and Police Employees Retirement System (Baltimore City Code, art. 22, § 34 (e)). He continued to receive his full salary through January 20, 1979; effective January 22, 1979, he began receiving the special disability pension in the amount of $243 per week.

Meanwhile, in July, 1978, Mr. Bowen filed a claim for workmen's compensation benefits, alleging "Heart disease pursuant to Section 64A." On May 23, 1979, the Workmen's Compensation Commission found that Bowen had sustained a permanent partial disability amounting to 50% industrial loss of use of the body as a whole by reason of a myocardial infarction; and, in accordance with §§ 36 (4a) and 64A (a), it awarded compensation at the rate of $135 per week, beginning January 16, 1978, "not to exceed the sum of $44,955.00 allowable under 'Other cases.' " [1]

Although both parties were necessarily aware that appellee had been receiving special disability benefits under the City retirement system since January, 1979, the Commission made no "adjustment" for such benefits, and the City made no immediate complaint about the award.

On July 12, 1979, the City suddenly discovered the double payments and, in accordance with § 64A (b), calculated that Bowen should have received only $44.03 per week as workmen's compensation (average weekly wage of $287.19 less disability benefit of $243.16). Determining that he had already been overcompensated by $7,043, the City stopped all future compensation benefits until that overpayment had been recovered. Bowen initially raised no objection to the

---

1. The $135 weekly benefit was presumably calculated as two-thirds of the State average weekly wage, as required by § 36 (4a). The $44,955 maximum was determined by multiplying the $135 by 333 weeks (250 weeks for the 50% disability under § 36 (4) plus the additional 83 weeks required under § 36 (4a)).

City's action; and indeed, in a letter to the Commission on November 28, 1979, his counsel agreed that Bowen's "weekly compensation benefits should be $44.03 per week and the previous awards of compensation should properly be corrected to reflect same."

On July 17, 1979 — five days after receiving the City's communication regarding the double payments — counsel submitted a petition to the Commission seeking the maximum fee of $6,095, based upon the aggregate potential award of $44,955 (20% of first $7,000 + 15% of next $18,000 + 10% of balance of $19,955).

No immediate action was taken with regard to that petition. On April 9, 1981 — more than a year after a hearing on the matter — the Commission determined that the fee should not be based on the $44,955, but only on $14,662 ($44.03 x 333 weeks), producing a fee of only $2,549. The Commission reached that determination by regarding the special disability benefits as a "set-off," as would be the case under § 33, and thus concluded that "[t]his award to the claimant, if being paid by the employer, self-insurer, is 100% of the salary less the pension benefits." Cited as authority for this approach were "Prince George's County vs. Peissner, 37, Md. 124 (1977) and Hoffman vs. Liberty Mutual, 232, Md., 51, 191 A, 2575 (1963)."[2]

Although the rationale used by the Commission with respect to the counsel fee would also support the City's position regarding the award itself, the April, 1981 order related only to the fee and did not purport to alter the May 23, 1979, compensation award. It was thus counsel, and not Mr. Bowen, who regarded themselves as aggrieved; and it was they, and not Bowen, who filed a petition for appeal in the Superior Court of Baltimore City complaining of the Commission's failure to award them the entire $6,095. Bowen was sent a copy of his attorneys' petition, but he filed

---

2. The first reference, we assume, was intended to be *Prince George's Co. v. Feissner*, 37 Md.App. 124 (1977), although it would no doubt have been more appropriate to cite the Court of Appeals' decision affirming, *Feissner v. Prince George's Co.*, 282 Md. 413 (1978).

no answer and declined to participate in the judicial proceeding, perhaps upon the strength of counsel's assertion in paragraph 7 of the petition that he (Bowen) was entitled to receive the entire $44,955 awarded by the Commission.

The City answered the petition, averring that Bowen was entitled to receive only $14,662, and that the counsel fee should therefore be limited to $2,549.

The court obviously regarded the issue before it as involving not just the counsel fee but also the compensation award itself. Disagreeing with the Commission's approach and concluding that *Feissner* was inapplicable, the court, by order of June 4, 1982, (1) found that Bowen was entitled to the entire $44,955, without set-off, said amount to be paid at the rate of $44.03 per week (for 1,021 weeks), in addition to the special disability payments, and (2) remanded the case to the Commission with directions to award a counsel fee in the amount of $6,095, such fee to be paid "in a lump sum without discount, and to be deducted from the final weeks of compensation payable to the Claimant. . . ."

The City has brought this appeal from that order, presenting to us, in a brief and appendix that fail of compliance with Maryland Rules 1028 and 1031a in several respects,[3] the argument that "Liability under an Article 101, Md. Code, Sec. 64-A claim is satisfied by combined weekly pension and compensation benefits that do not exceed the average weekly wage, and are paid only for the periods of weeks provided in the benefit schedule of Article 101 Md. Code, Sec. 36."

---

3. The City's appendix does not contain a copy of counsel's petition for appeal, which is critical to a determination of the issue(s) properly before the Superior Court. *See* Maryland Rule 1028b1 (b). Maryland Rule 1031a requires that briefs in this Court have margins of one inch at the top of the page and one and a-half inches on the left and that, if typed, they be double-spaced. The City's brief is single-spaced, does not contain the proper margins, and is difficult to read. This kind of noncompliance subjects the appeal to dismissal, which, we take this opportunity to warn the City, is what likely will happen the next time we encounter such transgressions.

*Discussion*

The issue presented to us by the City — how §§ 36 and 64A should be harmonized — is one of first impression. It is not necessarily governed by *Feissner v. Prince George's Co., supra,* 282 Md. 413, as the Commission supposed. *Feissner* dealt with § 33 of art. 101, which clearly provides for a set-off or reduction in compensation benefits; § 64A (b) arguably provides for a different form of adjustment.

Unfortunately, this important issue is not properly before us because it was not properly before the Superior Court. As we have noted, the appeal to the Superior Court was taken by Bowen's counsel, not by Bowen. Counsel were identified as the petitioners and they signed the petition as such. They complained only of the attorneys' fee, and the only substantive relief requested in the petition was that the court

"review the decision of the Commission of April 9, 1981, and find that the Commission erred in its Order relating to the award of an attorneys fee to your Petitioners, and that this Honorable Court direct the Workmen's Compensation Commission to approve an attorneys fee to Claimant's counsel in the amount of $6,095.00."

The Commission's order of April 9, 1981, as we have also noted, related only to the counsel fee, and did not purport to alter the May, 1979 compensation award.

The authority of a reviewing court in compensation cases is broader than in most other administrative appeals *(see Maryland Bureau of Mines v. Powers,* 258 Md. 379 (1970); *Montgomery Ward & Co. v. Bell,* 46 Md.App. 37 (1980)); but that authority does not extend beyond the matters actually presented in the petition. Maryland Rule B13 makes this clear: "The Court shall affirm, reverse or modify *the action appealed from,* remand the case to the agency for further proceedings, or dismiss the appeal as now or hereafter provided by law." (Emphasis supplied.) *See also* § 56 (a) of art. 101. As the issue of the underlying compensation award was not presented to the court in counsel's petition for appeal,

and indeed under the principles laid down in *Switkes v. John McShain,* 202 Md. 340 (1953) could not be so presented, the court had no authority to consider or tamper with it. That part of the court's order purporting to direct the amount and method of payment of the compensation award therefore must be vacated.

The question of the fee presents a somewhat different issue — what authority a court has over the setting of counsel fees by the Commission.

As we have noted, § 57 of art. 101 places the setting of attorneys' fees within the control of the Workmen's Compensation Commission, prohibiting the collection of any fee not approved by the Commission, giving that body "full power to hear and determine any and all questions which may arise concerning legal services rendered in connection with any claim under this article," and empowering it to order an attorney to refund "any portion of any charge for legal services which the Commission may, in its discretion, deem excessive."

Section 57 concludes with the provision that "[o]rders of the Commission regulating payments and refunds for legal services may be enforced in the courts of this State, *or may be appealed from* in like manner as awards for compensation under this article." (Emphasis supplied.) The emphasized language authorizing appeals from fee orders was added to the statute, without explanatory comment, in 1941. *See* Acts of 1941, ch. 869. It raises a number of problems that have not been squarely addressed by the appellate courts.

When, as here, the claimant's attorney appeals the amount of counsel fee set by the Commission, he immediately creates a conflict of interest between his client and himself. His fee ultimately is paid by the claimant out of the compensation award, *Chanticleer Skyline Rm. v. Greer,* 271 Md. 693 (1974), *Feissner v. Prince George's Co., supra,* 282 Md. 413; and thus, for each dollar by which his fee is increased, his client will receive a dollar less. The real respondent in such an appeal is therefore the client, not the employer or the Commission; and no provision is made in

§ 57 for a claimant to protect himself when placed in that position. The reality of this conflict is not lessened by the fact that the law arguably permits such an appeal, that counsel (as here) are entirely honorable and are proceeding in good faith, or that, at the time the fee petition was submitted to the Commission, the claimant assented to the requested fee.[4]

The authority of a claimant's attorney to appeal a fee order *in this type of circumstance*[5] has been considered only once in Maryland, and then by way of *dicta.* In *Switkes v. John McShain, supra,* 202 Md. 340, a question arose as to the standing of claimant's counsel to appeal the denial of a compensation award. The claimant had died during the time for noting an appeal from the Commission's order and his counsel attempted to obtain judicial review of the Commission's decision by noting an appeal in his own name. Subsequently, the claimant's widow (who was also the administratrix of his estate) was substituted as the appellant. Affirming the lower court's dismissal of the appeal, the Court of Appeals held that the attorney was not an aggrieved person under § 56 (a), and thus had no standing to bring the appeal. *In that context,* the Court noted the provisions of § 57, and said, at p. 349:

> "it is evident that the right of a lawyer to litigate, or appeal from the lower court decision, concerning a fee, arises by virtue of this Section, and is limited to the right to the fee and its size, and to the obligation to refund. Put differently, the Section says that a lawyer is a party in interest only when he has been granted or denied a fee. . . ."

This statement was certainly not necessary to the holding in the case; indeed, if anything, it was made in contrast to

---

4. That problem could be resolved, at least as of record, if the claimant knowingly and voluntarily joins in the petition for appeal or files a pleading indicating no objection to his attorney's request for an increase in fee.

5. *Compare Feissner v. Prince George's Co., supra,* 282 Md. 413, where the claimant's attorney sued the employer for his fee. In that case, had the attorney been successful (and he was not), the fee would not have come from his client's pocket, as the compensation award itself had been extinguished.

that holding, and thus clearly represents *obiter dicta.* Although technically we are not bound by such *dicta,* we shall assume that the Court of Appeals did not speak idly and that it would translate its statement into a holding if the occasion for it to do so should arise. We shall therefore assume that, despite the clear conflict of interest, a claimant's attorney may, under § 57, appeal the amount of fee established or approved by the Commission.[6]

Acknowledging the right to appeal merely begs the question, however, of the nature and breadth of the reviewing court's authority.

Section 57 states that the appeal shall be "in like manner" as appeals from compensation awards which would seem to refer to the procedure for taking the appeal, not what the court may do with it. Section 56 (a), dealing generally with appeals from Commission orders, authorizes the court to "determine whether the Commission has justly considered all the facts concerning the injury, whether it has exceeded the powers granted it by the article, and whether it has misconstrued the law and facts applicable in the case decided." The statute continues: "If the court shall determine that the Commission has acted within its powers and has correctly construed the law and facts, the decision of the Commission shall be confirmed; otherwise it shall be reversed, modified, or remanded to the Commission for further proceedings."

Under this section, the court looks at three things: (1) did the Commission justly consider all the facts "concerning the injury"; (2) did it exceed the powers granted to it by art. 101; and (3) did it misconstrue the law and facts "applicable in the case decided"?

In this case, of course, there was no need to make the first inquiry. The validity of the underlying compensation award

---

6. To conclude otherwise would not render the 1941 amendment entirely nugatory. Obviously, the claimant may feel aggrieved at the amount of fee set by the Commission as, in death cases, may his dependents.

was not properly before the court, and thus there was no occasion to consider the facts "concerning the injury."

The second and third inquiries overlap to some extent. The crux of them both is the general authority of the Commission under § 57 to approve counsel fees and determine all questions arising with respect to them, and its partial exercise of that authority through the adoption of a maximum fee schedule.

Although it is true, and has been generally held, that the statutory authority to set counsel fees does not permit a commission to be arbitrary or capricious, or to set fees so low as to deprive claimants of a practical ability to obtain counsel, still, where the law has vested this authority in the commission, it is not the province of the courts to constrain the legitimate exercise of the commission's discretion. *See* 3 Larson, *The Law of Workmen's Compensation,* §§ 83.13, 83.16; 10 Schneider's *Workmen's Compensation,* § 2107; *Zizolfo v. Western Elec. Co.,* 422 N.Y.S.2d 137 (A.D. 1979); *Eisenberg v. Estowski,* 207 N.W.2d 874 (Wis. 1973); *Silsby v. State Acc. Ins. Fund,* 592 P.2d 1074 (Or. 1979); *cf. Chanticleer Skyline Rm. v. Greer, supra,* 271 Md. at 699-700, where the Court said of § 57:

> "[T]his statutory system acts to prohibit the dissipation of an employee's compensation through the payment of excessive legal fees out of the award by giving the Commission the power to regulate when and how much remuneration an attorney who represents a claimant in workmen's compensation litigation is to receive from the employee for legal services rendered to him."

The error into which counsel and the court fell is the belief that the fee schedule established by the Commission in its "Statement Of Policy" represents an *entitlement.* It does not. It very clearly states that it is merely "a guide in determining the allowance and approval of attorneys' fees," and that the fees specified therein are "maximum fees." The fees are "not to exceed" the percentages listed in the Statement of Policy. So long as its action is not arbitrary, the

Commission has every right to award less than the maximum; and, if it does so, the only issue on appeal becomes whether it has abused its discretion.

It seems clear from the record before us that the Commission intended to award the maximum fee provided for in the Statement of Policy, but on a reduced base. As we suggested earlier, the Commission may well have erred in the legal assumption that caused it to reduce the base, and thus its reasoning process may well have been flawed. That does not, however, *necessarily* make the resulting award of $2,549 an abuse of discretion, and it certainly does not permit the reviewing court to order a fee of $6,095.

Having concluded that the Commission erred in its analysis of the interaction between §§ 64A (b) and 36 (4a), the appropriate thing for the court to have done was to remand the case to the Commission for reconsideration of the fee petition in light of the court's conclusions of law. The Commission could then proceed to exercise its discretion within the framework of the law as prescribed by the court. That approach would preserve both the Commission's authority to set the fee and counsel's "right" of judicial review under § 57. We shall remand the case to the Circuit Court — the successor tribunal to the Superior Court — for that purpose.

> *Judgment vacated; case remanded to Circuit Court for Baltimore City for further proceedings in accordance with this opinion; appellees William H. Engelman and Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., to pay the costs.*