575 A.2d 1267

**Cornelius B. EDMOND**

v.

**TEN TREX ENTERPRISES, INC., et al.**

**No. 1665, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

July 2, 1990.

Charles T. Vekert (Sheldon H. Laskin, on the brief), Columbia, for appellant.

Julia M. Freit, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee, Workmen's Compensation Comm'n.

Argued before GARRITY, ROSALYN B. BELL and FISCHER, JJ.

ROSALYN B. BELL, Judge.

This case requires us to review the cap on attorney's fees in workers' compensation cases. The facts that gave rise to this appeal began in 1984 when Sheldon H. Laskin prepared an Employee's Claim for Workers' Compensation on behalf of Cornelius B. Edmond (claimant). After a hearing, the Workers' Compensation Commission (Commission) awarded the claimant compensation for temporary total disability.

Laskin was awarded an attorney's fee in the amount of $916.

Another hearing was held in 1988 in which the Commission awarded the claimant compensation for permanent total disability. Laskin filed a petition for attorney's fees in the amount of $8,526, but was awarded only $6,100. Laskin appealed from this award to the Circuit Court for Anne Arundel County. The trial judge found that the Commission's award of a $6,100 fee was not arbitrary and capricious and that the Commission acted within its discretion in making the award.

In this appeal, Laskin contends that the trial court erred by ruling that the Commission's maximum fee limitation:

—is not a regulation; [1]

—was not illegally promulgated;

—was not inconsistent with the Commission's previous Statement of Policy for the Approval of Attorneys' Fees;

—is not so cheeseparing as to deny claimants effective representation of counsel; and

—does not violate COMAR 14.09.01.21B, which mandates review and update of the Commission's fee guidelines.

Laskin further argues that the Commission made errors of law, and that the circuit court either did not address those errors or, by its acceptance of the Commission's errors, compounded them. In other words, Laskin urges us to substitute our judgment for that of the Commission. This we cannot do. We will first address the proper standard of review and then turn to the crux of this appeal, whether the fee awarded was an abuse of discretion. We find no abuse of discretion and affirm the lower court's decision.

---

1. We need not address this claim since the Commission has admitted in its supplemental brief that the "Statement of Policy" guidelines and recommended cap are regulations.

## STANDARD OF REVIEW

■ The General Assembly has granted the Commission authority over all matters dealing with attorney's fees. Maryland Code Ann. Art. 101, § 57 (1957, 1985 Repl.Vol.), specifies that the Commission has "full power to hear and determine any and all questions which may arise concerning legal services rendered in connection with any claim under this article...." That section also provides that "[n]o person shall charge or collect any compensation for legal services in connection with any claims arising under this article ... unless the same be approved by the Commission." § 57.

In *Kaczorowski v. Mayor of Baltimore*, 309 Md. 505, 516, 525 A.2d 628 (1987), the Court of Appeals said that when we pursue the context of statutory language,

"legislative purpose is critical, that purpose must be discerned in light of context, and that 'statutes are to be construed reasonably with reference to the purpose to be accomplished....' The purpose, in short, determined in light of the statute's context, is the key. And that purpose becomes the context within which we apply the plain-meaning rule." (Citations omitted.)

The Court explained that it is not necessary to go beyond the language of the statute if the language is clearly consistent with the apparent purpose. *Kaczorowski*, 309 Md. at 515, 525 A.2d 628.

In the instant case, the primary purpose of § 57 is to protect an employee's compensation award from diminution through the payment of excessive legal fees. The Commission is authorized to adopt appropriate safeguards to achieve this goal. *Feissner v. Prince George's County*, 282 Md. 413, 418, 384 A.2d 742 (1978); *Chanticleer Skyline Room, Inc. v. Greer*, 271 Md. 693, 699–700, 319 A.2d 802 (1974). In furtherance of this purpose, the Commission has exercised its authority over attorney's fees by promulgating regulations. COMAR 14.09.01.21B, which is at issue in the

instant case, is one such regulation. In its entirety, CO-MAR 14.09.01.21B provides:

"The Commission, from time to time, will review matters pertaining to attorney's fees and will issue appropriate guidelines which shall be followed by Commissioners approving fees unless cause to the contrary is shown."

The Commission also adopted a Statement of Policy to be used as a guide in determining the allowance and approval of attorney's fees. Part of the guide provides:

"Maximum fees for permanent partial disability cases shall be as follows:

"1) An amount not to exceed 20% of the first $7,000.00 or the sum of $1,400.00.

"2) On the amount in award from $7,001.00 to and including $25,000.00, an amount not to exceed 15% or $2,700.00.

"3) On the amount in awards in excess of $25,000.00, a fee not to exceed 10%."

Letter issued by the Workmen's Compensation Commission entitled "Statement of Policy for the Approval of Attorneys' Fees" dated October 20, 1970, *reprinted in* MICPEL, Worker's Compensation Manual (1989 Rev.Ed.) § 268, at 89–92. In 1975, the Commission decided to amend its Statement of Policy [2] to include a cap on attorney's fees of $6,100 in view of the revision which provided for awards over $45,000.

In reviewing the Commission's decision on an award of attorneys' fees, the only issue on appeal is whether the Commission has abused its discretion. *Mayor of Baltimore v. Bowen,* 54 Md.App. 375, 387, 458 A.2d 1242 (1983). The reviewing court looks at whether the Commission exceeded its powers granted by Art. 101, and whether it misconstrued the law and facts which applied in that case. *Bowen,* 54 Md.App. at 385, 458 A.2d 1242. Since the Commission is vested with the authority to set counsel fees, "it is not the

---

**2.** The Statement of Policy represents a guide, not an entitlement. *Mayor of Baltimore v. Bowen,* 54 Md.App. 375, 386, 458 A.2d 1242 (1983).

province of the courts to constrain the legitimate exercise of the commission's discretion." *Bowen,* 54 Md.App. at 386, 458 A.2d 1242. Therefore, the proper standard of review of the Commission's decision where attorney's fees are at issue is the abuse of discretion standard.

## ABUSE OF DISCRETION

■ In exercising its discretion to set the amount of attorney's fees, the Commission is required to protect the claimant against depletion of the compensation award by an excessive counsel fee. *Feissner,* 282 Md. at 418, 384 A.2d 742. The fee cannot, however, be so low as to deprive claimants of a practical ability to obtain counsel. *Bowen,* 54 Md.App. at 386, 458 A.2d 1242. As this Court has previously stated in *Mitchell v. Goodyear Service Store,* 63 Md.App. 426, 436, 492 A.2d 984 (1985):

> "The reason that the Commission is empowered to set the amount of the attorney's fees is to prevent any unscrupulous members of the Bar from exacting excessive fees from injured claimants. The fee should be in an amount that is fair and reasonable to claimant and counsel alike. The award of counsel fee should be on the basis of work performed and the result obtained."

■ In the instant case, Laskin sought a fee of $8,526, which he calculated by using the maximum percentages allowed under the Commission's Statement of Policy guidelines.[3] In his petition for attorney's fees, Laskin valued the claimant's award at a minimum of $69,264. He arrived at this number based on the minimum projected payout for the loss of a scheduled member (an eye). He further justified

---

**3.** Laskin requested the counsel fee, using the maximum percentages allowed under the Commissions' Statement of Policy guidelines, as follows:

| | |
|---|---|
| 20% of the first $7,000 of compensation | – $1,400 |
| 15% of the next $18,000 of compensation | – 2,700 |
| 10% of the compensation over $25,000 | – 4,426 |
| Total | – $8,526 |

this figure by noting that the payments to the claimant are for life and the claimant's life expectancy could be anticipated to produce far more money than this figure indicates. We find these assertions to be without merit.

The Commission did not award the requested fee. It awarded the claimant compensation

"at the rate of $269.00, payable weekly, beginning October 12, 1988, and amounting to $45,000.00 and subject to further payments as provided in Section 36, Sub-section (1)(a) of Article 101 so long as the claimant continues to be permanently totally disabled."

The Commission then awarded Laskin $6,100 in attorney's fees in conformance with its guidelines.

Although the claimant's compensation award could reach and even exceed the $69,264 mark, the award could also be as low as $45,000. Starting October 12, 1988, the claimant began receiving $269 a week.[4] By January, 1992, the claimant will have received the aggregate amount of $45,-000. Thereafter, if he continues to be totally disabled, he will continue to receive $269 a week for the rest of his life. If the claimant dies before receiving the $45,000, his surviving dependents will be entitled to the unpaid balance of that amount; but if he dies after receiving the $45,000, no additional compensation will be payable. Md.Code Ann. Art. 101, § 36(1)(e) (1957, 1985 Repl.Vol., 1989 Cum.Supp.).

Moreover, focusing on value based on life expectancy would lead to unreasonable results. As we stated in *Mitchell*, evaluation of a compensation award based on life expectancy "is but an educated guess grounded on statistics and, as such, subject to the unexpected." *Mitchell*, 63 Md.App. at 434, 492 A.2d 984. Attorneys performing essentially identical services, obtaining the same outcome with respect to the Commission's findings on the nature and extent of disability, would receive significantly disparate

---

4. In actuality, the claimant receives $269.00 less the prorated attorney's fee. This will continue until the $45,000 gross amount is reached.

fees simply because of the differences in ages of their clients. The attorney working for the younger client would receive a greater fee than the attorney representing the older client, even though the amount of work performed was the same. This would contradict *Mitchell* which used the complexity of the claim and the work performed as the criteria in the award of attorney's fees.[5]

Laskin further contends that he is entitled to the maximum fee because of the unusual and unconscionable delay of the claimant's hearings. We disagree.

In affirming the Commission's decision, the trial court stated:

"Although this case did continue for approximately four years, that fact is not necessarily reason enough for a large award. The amount of work done may and should also be considered. At the hearing the Commission correctly stated that the length of time of a claim does not necessarily reflect the work performed and that there was no evidence in this case of any complication. The Commission appears to have applied the *Mitchell* test properly."

We agree with the trial judge and perceive no error in the application of the *Mitchell* test. Since there is no evidence of any exceptional difficulty with the claim, we cannot say the Commission abused its discretion.

## STATEMENT OF POLICY GUIDELINES
### —Illegal Promulgation—

Laskin raises a number of questions in connection with the ceiling of $6,100 on attorney's fees. He contends: (1)

---

**5.** Certainly, the age of the individual is an issue in the amount of damages awarded where permanent injury is alleged in an ordinary tort case. Contingent attorney's fees may well vary based on the age factor. Moreover, a verdict based on life expectancy is reduced to present value and a specific sum awarded; hence, the amount upon which the award is based is fixed just as the $45,000 amount is fixed. Any amount over $45,000 is not fixed. In any event, worker's compensation cases are not necessarily treated in the same manner as a public purpose is being served.

that it was promulgated illegally; (2) that the limitation is so cheeseparing as to deny claimants effective representation; and (3) that the Commission has failed to follow its own regulations by not updating the fee guidelines since 1970.

■ The Commission's Statement of Policy guidelines were adopted in 1970. The $6,100 fee limitation was established in 1975 in light of the amendment of Art. 101, § 36(1)(a), allowing continuing compensation payments above $45,000. Neither of these regulations were promulgated or published in the manner required under the Administrative Procedure Act (APA).

The Commission was not, however, required to so promulgate and publish its regulations at that time. When these regulations were adopted, the then Workmen's Compensation Commission was expressly excluded from the jurisdiction of the APA. The law provided:

"For the purpose of this subtitle:

"(a) **'Agency'** means any State board, commission, department or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches, and the Governor, and except the Maryland Parole Commission, *the Workmen's Compensation Commission,* the State Accident Fund, the State Insurance Department of Maryland, the Public Service Commission, the Employment Security Board and the State Tax Commission...." (Emphasis added.)

Md.Code Ann. Art. 41, § 244(a) (1957, 1982 Repl.Vol.). Hence, the Commission was exempt and there was no requirement that its guidelines or policy statement be promulgated in accordance with the APA.

In 1984, the APA was revised and recodified as part of Md.State Gov't Code Ann. § 10–101 *et seq.* (1984), and as part of the revision the Workers' Compensation Commission was no longer exempt from publication requirements. § 10–102. Nothing in the APA, however, indicated that the statutory regulations applied retroactively. Further, a stat-

ute is presumed to operate prospectively. *Washington Suburban Sanitary Comm'n v. Riverdale Fire Co.,* 308 Md. 556, 560, 520 A.2d 1319 (1987). "The presumption against retrospectivity is rebutted only where there are clear expressions in the statute to the contrary" and only "upon the plainest mandate in the legislation." *Washington Suburban Sanitary Comm'n,* 308 Md. at 561, 520 A.2d 1319.

Chapter 284 of the 1984 Laws of Maryland, by which the APA was amended, contains no evidence of any intent that it be applied retrospectively. Further, § 18 of Chapter 284 provides as follows:

"AND BE IT FURTHER ENACTED, That, except as expressly provided to the contrary in this Act, any transaction affected by or flowing from any change of nomenclature or any statute there amended, repealed, or transferred, and validly entered into before the effective date and every right, duty, or interest flowing from the statute *remains valid after the effective date* and may be terminated, completed, consummated, or enforced as required or permitted by any statute amended, repealed, or transferred by this Act as though the repeal, amendment, or transfer had not occurred. If the change in nomenclature involves a change in name or designation of any State agency, the successor agency shall be considered in all respects as having the powers and obligations granted the former agency." (Emphasis added.)

Finding no clear expression either in the APA or the legislative history of an intention that the 1984 APA revisions were to be retroactive, we hold that the Commission was not required to repromulgate and republish its existing regulations when it became subject to the APA.

—Cheeseparing—

■ Laskin argues that the existing attorney's fees regulations are so cheeseparing that they deny claimants effective representation. He bases his argument on the decrease in the value of the dollar, the increase in the cost of

living, and the fact that the fee schedule has, nevertheless, remained unchanged for 20 years. While there is some merit in Laskin's argument, we cannot say that $6,100 is so little as to be "cheeseparing." The fee award is consistent with *Mitchell*, which looked at the actual number of hours worked plus the difficulty of the issues, not the duration of the litigation (four years in this case).

—Updating—

Laskin also contends that the Commission violated its regulations by not updating the fee guidelines since 1970. As noted above, the regulation [6] states that the Commission "will review matters pertaining to attorney's fees and will issue appropriate guidelines which shall be followed...."

Admittedly, the Commission has not issued new guidelines. However, this does not mean that the Commission has not, in fact, reviewed the current guidelines and found them still applicable. Again, we note that there is a seeming abundance of attorneys who willingly handle Workers' Compensation claims based on the 1970 fee schedule and the 1975 cap.

Additionally, the burden of proof is generally on the party asserting the affirmative of an issue before an administrative body. *Bernstein v. Real Estate Comm'n of Maryland*, 221 Md. 221, 231, 156 A.2d 657 (1959), *appeal dismissed*, 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515, *reh'g*

---

**6.** We observe that COMAR 14.09.01.21B was proposed for adoption on December 23, 1982, 9:26 Md.Reg. 2590, 2593, and became effective July 1, 1983. These dates are prior to the 1984 revision which subjected the Commission to the APA. Thus, the Commission appears to have voluntarily acted as if it were under the APA before it was required to do so.

This fact, which neither of the parties mentions, is a double-edged sword. On the one hand, the fact that this regulation was promulgated in 1982–83 implies that it was reviewed at that time, thus undercutting Laskin's claim that the Commission has not reviewed the fee guidelines since 1970. On the other hand, the fact that the Commission voluntarily acted in accordance with the APA before it was required to do so tends to imply that it agreed to do so.

*denied,* 364 U.S. 855, 81 S.Ct. 35, 5 L.Ed.2d 79 (1960). That burden of proof is by a preponderance of the evidence. *State Ins. Comm'r v. National Bureau of Casualty Underwriters,* 248 Md. 292, 304, 236 A.2d 282 (1967). Laskin has not met this burden. The mere assertion that the Commission has not performed its required review is not enough to meet this burden. Nor does the fact that new guidelines have not been issued mean that the Commission has not conducted such a review. Based on its expertise and within its statutory authority, the Commission has determined that the fee regulations are appropriate. Accordingly, we hold that the Commission has not violated its own regulation.

JUDGMENT AFFIRMED. SHELDON H. LASKIN ESQ. TO PAY COSTS.