686 A.2d 1107

**Donald F. ROGERS,**

**v.**

**Joseph L. WELSH.**

**No. 522, Sept.Term, 1996.**

Court of Special Appeals of Maryland.

Dec. 27, 1996.

Donald F. Rogers, Baltimore, for appellant.

Gabriel J. Poggi, Severna Park, for appellee.

Argued before MURPHY, C.J., and CATHELL and HOLLANDER, JJ.

CATHELL, Judge.

Donald F. Rogers appeals from a judgment of the Circuit Court for Baltimore County (Cadigan, J., presiding) that sustained a decision of the Workers' Compensation Commission, which awarded appellant counsel fees in the amount of $12,500 in respect to appellant's representation of Joseph Welsh, appellee, in a workers' compensation case. Some of the questions appellant presents are general in nature, while others are specific to this case. We repeat them as given:

1. Does the Worker[s'] Compensation Commission as a matter of [c]ommon practice award attorney's fees in excess of their Statement of Policy for the Approval of Attorney's Fees (the guidelines)?

2. Should the appellant's work performance and extremely favorable settlement on behalf of his client, by the exercise of reasonable interpretation, entitle him to an enhanced award in excess of the guidelines?

3. Should the computation of attorney['']s fees under the guidelines be limited to a $45,000 parameter when a $150,-561 lump[-]sum settlement is involved and an extraordinary work effort has been performed and an exceptional result achieved because of that work effort?

4. Did the Commission abuse its discretion in refusing to acknowledge the Appellant's fully documented extraordinary work effort and the superb result achieved for his client?

5. Did the Circuit Court of Baltimore County err in not remanding the case back to the Worker's Compensation Commission?

### The Award of Fees

In *Edmond v. Ten Trex Enters., Inc.,* 83 Md.App. 573, 577, 575 A.2d 1267 (1990), we first noted that in workers' compensation fee cases, "the only issue on appeal is whether the Commission has abused its discretion" in fashioning the fee award. We later noted that "[s]ince the Commission is vested with the authority to set counsel fees, 'it is not the province of the courts to constrain the legitimate exercise of the commission's discretion.'" *Id.* at 577–78, 575 A.2d 1267 (quoting *Mayor of Baltimore v. Bowen,* 54 Md.App. 375, 386, 458 A.2d 1242 (1983)). We then stated the limits on the Commission's discretion:

In exercising its discretion to set the amount of attorney's fees, the Commission is required to protect the claimant against depletion of the compensation award by an excessive counsel fee. *Feissner [v. Prince George's County]*, 282 Md. [413,] 418, 384 A.2d 742 [ (1978) ]. The fee cannot, however, be so low as to deprive claimants of a practical ability to obtain counsel. *Bowen,* 54 Md.App. at 386, 458 A.2d 1242.

83 Md.App. at 578, 575 A.2d 1267. In affirming the trial court's affirmance of the Commission, we concluded:

We agree with the trial judge and perceive no error in the application of the *Mitchell [v. Goodyear Serv. Store,* 63 Md.App. 426, 492 A.2d 984 (1985), *aff'd,* 306 Md. 27, 506 A.2d 1178 (1986) ] test. *Since there is no evidence of any exceptional difficulty with the claim,* we cannot say the Commission abused its discretion.

83 Md.App. at 580, 575 A.2d 1267 (emphasis added).

In the case *sub judice,* appellant argues that there was substantial evidence of exceptional difficulty. Accordingly, we

look to the evidence of that difficulty.[1]

The workers' compensation claimant, appellee, fell from a cashier's stool onto the floor, striking his head. He asserted that, as a result, he developed a heart condition. In 1983, during contested proceedings, the Commission found that the claimant had suffered a work-related injury and awarded him temporary total disability. The employer and insurer appealed that order to the circuit court. There, a jury affirmed the award to the claimant. No further appeal as to that award was taken.

After appellee reached maximum improvement, a further hearing was held on May 15, 1987, as to the "nature and extent of disability." The Commission denied benefits, by order of November 10, 1987, finding that the disability was not related to the injury of September 6, 1982. That decision was then appealed to the circuit court. Prior to a trial, the circuit court granted summary judgment in favor of appellee, reversing the Commission's decision and remanding the matter back to the Commission, with special instructions in respect to the nature of claimant's psychiatric condition. That order was appealed to this Court, and we affirmed. The Court of Appeals denied *certiorari*.

Thereafter, the case was heard by the Commission, which found that appellee was permanently disabled solely due to the accidental injury and that the Subsequent Injury Fund was, therefore, not liable. The employer and insurer requested a rehearing, and one was held in October of 1990 with the same result. The employer and insurer then appealed to the circuit court. While this trial was pending, and just prior thereto, the parties settled the case for a total lump-sum payment of $150,561, composed of $75,561 already due the claimant for the period of September 1982 to May of 1991, $50,000 in additional contributions from the employer and

---

1. We extrapolate this material from the Statement of Facts in appellant's brief. Appellee does not contest that statement.

insurer, and $25,000 in contributions from the Subsequent Injury Fund.

At that time there was in place a fee schedule that placed an initial cap of $45,000 on these types of awards, even though the statute provided for methods of continuing payments to a claimant in excess of $45,000 when a finding of permanent disability was made. That attorneys' award fee schedule was applied only up to the $45,000 cap and not to the continuation payments beyond that amount.

In *Mitchell v. Goodyear Serv. Store,* 63 Md.App. 426, 492 A.2d 984 (1985), *aff'd,* 306 Md. 27, 506 A.2d 1178 (1986), as relevant to the issues here presented, Mitchell's attorney disputed the amount of the fee award based upon a calculation of Mitchell's weekly award of $220, his age, and what he would receive if he had an average life expectancy. That calculation resulted in a possible total of $245,000 more than the amount initially awarded by the Commission. We stated:

[W]e now focus upon the fee awarded by the Commission with respect to the projected figure of $245,000 in compensation benefits. Of course, that figure, based on life expectancies, is but an educated guess grounded on statistics and, as such, subject to the unexpected.

. . . .

The fee requested by Barnes [Mitchell's counsel] in the instant case is approximately 5 percent of the additional possible $245,000 award. The $4,000 awarded Barnes by the Commission, as an additional fee, amounts to 1.6 percent of the $245,000. Although the policy statement provides a maximum fee and not an entitlement (*see Bowen*[, 54 Md. App.] at 386, 458 A.2d 1242), the Commission may not set fees so cheeseparingly as to deprive claimants of the practical ability to obtain competent counsel. *See Bowen*[, 54 Md.App.] at 386, 458 A.2d 1242 A. Larson, Workmen's Compensation Law § 83.16 (1982 ed. & Supp.1984); *Cline v. Warrenberg,* 109 Colo. 497, 126 P.2d 1030 (1942) (denying claimants the right to competent legal representation by fixing [inadequate] attorney's fees may constitute a denial of due process).

. . . .

The Commissioner further expressed concern that Barnes used life expectancy tables in computing the size of the claimant's award. The Commissioner opined:

> "[T]here is no basis of the allegation that he [the claimant] will receive in excess of $250,000. He'll get it if he lives, and unless you can assure me that he will do that . . . [incomplete sentence]."

. . . .

Furthermore, the trial judge was correct in remanding the case to the Commission rather than setting the amount of the fee. The circuit court was acting in an appellate and not a trial capacity. Remanding the case to the Commission "[p]reserve[s] both the Commission's authority to set the fee and counsel's 'right' of judicial review under [Md.Code, Art. 101,[2]] § 57." *Bowen*, 54 Md.App. at 387, 458 A.2d 1242. 63 Md.App. at 433–35, 492 A.2d 984 (some brackets in original). As is especially pertinent here, in *Mitchell*, we reminded the Commission that:

> The award of counsel fee should be on the basis of the work performed and the result obtained. The Commission should never use the setting of fees as a methodology for exerting punitive measures on counsel. No judicial or quasi-judicial officer should take personal umbrage because he or she is reversed by a higher tribunal. In so commenting, we are not to be understood as attributing any improper motive to the Commission in the matter *sub judice*. Rather, we use this opportunity to comment on the subject purely in an academic vein.

*Id.* at 436, 492 A.2d 984.

With *Mitchell* in mind, we shall examine what appellant asserts were extraordinary efforts on his part, above and beyond the perceived complexity we have discussed.

---

**2.** Article 101 of the Maryland Code, Workmen's Compensation, was repealed by 1991 Md. Laws, Chap. 8, § 1, effective October 1, 1991. It was, thereafter, codified, in large part, without substantive change, as title 9 of the Labor & Employment Article of the Maryland Code.

We have examined appellant's Petition for Approval of Attorney's Fee and his Supplemental Petition for Approval of Attorney's Fees and Itemization. They contain approximately forty statements relating to the work appellant performed.[3] Of these forty, we perceive that thirty-seven of the allegations would be work that a highly skilled and competent counsel, such as appellant, would ordinarily do on behalf of a claimant during the various stages of these proceedings. While we are of equipoise as to several (three) instances of work performed, that decision is the Commission's to make, so long as its fact-finding is supported by sufficient evidence to make the issue fairly debatable and it does not abuse its discretion in the process. The Commission is deemed to be the expert in respect to the discretionary decisions the statute authorizes it to make. *See Mitchell, supra,* and *Edmond, supra.* Although it may be of little solace to Mr. Rogers, we perceive that he has rendered legal services to the claimant of a high quality and exhibited a great degree of professionalism in the process. He represented appellee's interests with complete competence, but that is what the guidelines contemplate.

We are not persuaded that the Commission abused its discretion in failing to find that appellant made extraordinary efforts on behalf of appellant when it awarded attorney's fees.

### The $45,000 Cap

This brings our attention to the existence of the cap itself and the somewhat intriguing issue arising out of the prior reasons why attorney's fees have not been awarded in respect to sums that might be received over and above the $45,000 cap in a lump-sum context.

Because we were faced with a somewhat different issue in *Mitchell v. Goodyear Serv. Store, supra,* some of the language of that case might appear to support a case-imposed require-

---

**3.** Some of the averments summarize previous averments. Some of the statements refer to the medical condition of the claimant, the status of the case, etc., which are covered by other averments. The itemization relates to the matters contained in the petition.

ment that attorney's fees must relate, not only to the original $45,000 award, but to the continuing payments thereafter. We commented that the fee requested by the attorney in that case was "approximately 5 percent of the additional possible $245,000 award" and that the fee actually awarded amounted to "1.6 percent of the $245,000." 63 Md.App. at 434, 492 A.2d 984. We then shortly thereafter noted, as indicated previously, that the fees could not be awarded so "cheeseparingly, as to deprive claimants" of the services of competent counsel. *Id.* While in *Mitchell* it appears as if we were approving the awarding of fees for sums above the $45,000 original award, we were not. We were merely noting that the fees requested and the fees awarded represented certain percentages of the additional sum. The issue of the appropriateness of attorneys' fees based on the additional sums potentially to be received, was not raised on appeal in *Mitchell* and was not addressed by that panel. That case was reversed by the trial court judge because he felt that the Commission had "predetermined the issue and that the amount of the fee requested . . . 'shocked' the Commission." 63 Md.App. at 430, 492 A.2d 984. The trial court directed the matter back to the Commission to reconsider the fee award. We presumed that there existed a "5 percent figure contained in the guidelines" and that it applied in respect to the sums over the $45,000 original award. In fact, it appears now that the five percent figure related to additional sums earned by reason of appeals, but still related to the fee cap of $6,100, which is based upon the original award of $45,000 in compensation to a claimant.[4] When applied to the facts here extant, some of the language in Mitchell may be inadvertently misleading. In any event, we note language that, although *dicta,* is relevant to the concerns we are now addressing. We said as to the $245,000 figure upon which extra compensation might be receivable that

---

4.  The schedule suggested that $6,100 was the amount that was appropriate based upon the percentages attributable to differing sums when the total award is $45,000.

that figure, based on life expectancies, is but an educated guess grounded on statistics and, as such, subject to the unexpected.

*Mitchell,* 63 Md.App. at 434, 492 A.2d 984. The intriguing issue presented in appellant's argument, that we will subsequently address, is that all doubt as to the amount appellee will actually receive has been removed in the case *sub judice.* By settling the case and receiving a lump-sum award in respect to future payments, the contingency as to the claimant's receipt of the payments has been removed. He, therefore, argues that there is no need to utilize the fee schedule cap of $45,000. Appellant, however, overlooks what we said in *Edmond,* that "In 1975, the Commission decided to amend its Statement of Policy to include a cap on attorney's fees of $6,100 in *view of the* revision which provided for awards over $45,000." 83 Md.App. at 577, 575 A.2d 1267 (footnote and citation omitted; emphasis added). Thus, that cap of $6,100 was created to address the possibility that awards over $45,-000 might, and probably would, on occasion, be made. The matter of the fee cap was reconsidered after the provision of an additional award and in response to the creation of the contingency payments. The Commission therefore considered the feasibility of the continuing payments as a part of its fee schedule. It is not an oversight.

In *Edmond,* we reviewed the award of counsel fees concentrating on the cap established by the Commission. Edmond's attorney had requested fees of $8,526 but was awarded the then applicable cap amount of $6,100.[5] He appealed, and the circuit court and our Court both affirmed. We noted that counsel was attempting to justify his request for a fee above the cap by "noting that the payments to the claimant are for life and the claimant's life expectancy could be anticipated to produce far more money than [$45,000]." *Id.* at 579, 575 A.2d 1267. We found the argument to be unpersuasive.

---

5. The initial cap, we are informed, has, since *Edmond,* again been increased; it is now in the area of $7,200.

In language that, in part, contributed to our earlier comment that the issue appellant presents is "intriguing," we said, in *Edmond*, "[a]lthough the claimant's compensation award could reach and even exceed the $69,264 mark, the award could also be as low as $45,000." *Id.* We, additionally, opined that

> focusing on value based on life expectancy would lead to unreasonable results.... [E]valuation of a compensation award based on life expectancy "is but an educated guess grounded on statistics and, as such, subject to the unexpected."

*Id.* (quoting *Mitchell,* 63 Md.App. at 434, 492 A.2d 984). Appellant argues, understandably, and admittedly with much logic, that nothing is unexpected when the future contingent compensation of a claimant, by settlement, becomes a lump-sum award and is no longer speculative.

In *Edmond,* after stating that "value based on life expectancy would lead to unreasonable results," we noted, as an example, that attorneys performing the same tasks would receive different fees based on the age differences of their clients. So long as lump-sum settlements are based, at least in part, on the life expectancies of clients, the fees could be equally unreasonable. Obviously, the life expectancy of a claimant in respect to compensation would be the paramount consideration of all parties involved in settlement negotiations. Thus, whether based on lump-sum settlements or periodic payments, the fee awards, to the extent that they would be based on the performance of services, could be inconsistent and, in some cases, unreasonable.

Moreover, there is another concern that must, of necessity, be addressed, *i.e.,* the public policy that is the foundation of the workers' compensation laws in the first instance. In *Edmond,* as previously pointed out, we summarized one of the desired results of the statute as it related to counsel fees: "The primary purpose of [Art. 101,] § 57 is to protect an employee's compensation award from diminution through the payment of excessive legal fees." 83 Md.App. at 576, 575 A.2d

1267. We then acknowledged that the "Commission is required to protect the claimant against depletion of the compensation award by an excessive counsel fee." *Id.* at 578, 575 A.2d 1267. We said, in *Mitchell,* that the reason why the Commission is empowered to set attorneys' fees is to prevent unscrupulous members of the bar from exacting excessive fees from injured claimants. 63 Md.App. at 436, 492 A.2d 984.

Our comments in *Edmond* and *Mitchell,* while important and correct, do not resolve the basic, fundamental question of whether the percentage fee schedules should be applied to sums above the $45,000 award that, but for a lump-sum settlement, would be paid out over the lifetime of a claimant. Obviously, if counsel fees in settlement cases were to be based upon the total amount of the lump-sum award, and yet fee awards in unsettled cases, in respect to claimants who are awarded continuing compensation, were based upon a maximum of $45,000, there would be a great disparity in the respective fee awards. Moreover, lump-sum awards could be expected to increase—if not drastically so.

It is through the process we have heretofore undertaken, that we have arrived at the real issues in this case:

A. Should lump-sum awards in lieu of periodic compensation over the life of a claimant be encouraged?

B. Is this type of public policy appropriate for the courts generally, or the Court of Special Appeals specifically, to create?

### A.

In *C & R Contractors v. Wagner,* 93 Md.App. 801, 614 A.2d 1035 (1992), *cert. denied,* 329 Md. 480, 620 A.2d 350 (1993), one of the issues we were asked to address was whether the Commission had the authority to award a lump-sum payment of $60,000 to a claimant under section 49 of Article 101 in a permanent total disability case where the initial $45,000 had not been paid. We quoted from the Court of Appeals's case of *Victor v. Proctor & Gamble Mfg. Co.,* 318 Md. 624, 627–28, 569 A.2d 697 (1990):

The Work[ers'] Compensation Act was passed to promote the general welfare of the State and *to prevent the State and its taxpayers from having to care for injured workmen and their dependents,* when under the law as it previously existed, such workmen could not recover damages for their injuries.

93 Md.App. at 807, 614 A.2d 1035 (emphasis added by us in *C & R Contractors* ). We then noted that *Victor* had "emphasized that the act's general purpose is to provide compensation for loss of *earning capacity."* *Id.* Thereafter, we noted that when Article 101 was amended to allow for payments above the $45,000 cap, it stated that "weekly payments at the rate previously paid shall be paid to him during such disability." *Id.* at 808, 614 A.2d 1035. We noted that the purpose clause of Chapter 671, 1973 Maryland Laws discussed "certain conditions." "The only condition mentioned in the body of the act was that total disability must be continuing." *Id.* We also specifically discussed that, as originally enacted, the statute prohibited the Commission from including any payments of continuing compensation (after the initial $45,000) in any lump-sum award. That lump-sum prohibition contained in the original enactment relating to continuing compensation was subsequently repealed.

As relevant to the case *sub judice,* we, in *C & R Contractors,* discussed the Commission's power, after the prohibition was repealed, to make lump-sum awards that terminated the right to continuing compensation entitlements. We noted that, in order to justify lump-sum awards, the Commission "must have an evidentiary basis supporting the extraordinary aspect of need expressed by the claimant and the amount of any such award." *Id.* at 811, 614 A.2d 1035.

After we had discussed some of the legislative history, in respect to the statutes that ultimately authorized lump-sum awards, we concluded:

As we perceive the intent of the Legislature generally, and as specifically reflected by the Subsequent Injury Fund amendments of 1986, it is concerned with insuring that

weekly benefits inure to a claimant, both to assist a claimant and to keep her/him from requiring public assistance. As we see it, and as we have previously stated, the primary purpose of the Act is to provide for periodic maintenance payments. In light of the legislative history we have reviewed, the 1986 amendments, though they eliminated the prohibition, have not changed that primary thrust of the Act, i.e., periodic payments.

*C & R Contractors,* 93 Md.App. at 813–14, 614 A.2d 1035 (footnote omitted). We additionally noted "that lump-sum awards are not favored," because "the primary purpose of the Act is to provide for periodic payments to keep a claimant from requiring public assistance." *Id.* at 814, 614 A.2d 1035.

We thereafter reviewed the trial court's affirmance of the Commission's lump-sum award. We discussed several cases, among them *Petillo v. Stein,* 184 Md. 644, 652, 42 A.2d 675 (1945) ("The policy of the statute does not favor lump-sum awards."); *Bethlehem Steel Co. v. Taylor,* 199 Md. 648, 87 A.2d 844 (1952) (need for car payment); *University of Maryland Medical Sys. Corp. v. Erie Ins. Exch.,* 89 Md.App. 204, 597 A.2d 1036 (1991). After discussing several other foreign cases, we noted that in *Valles v. Daniel Constr. Co.,* 589 S.W.2d 911, 912 (Tenn.1979), the Tennessee Supreme Court noted that workers' compensation statutes were intended "to provide for periodic payments, as a substitution for the regular income theretofore earned." 93 Md.App. at 820, 614 A.2d 1035. We recognized that the Tennessee court's position was consistent with Maryland's and that lump-sum payments were to be exceptions and only "cautiously considered."

In *C & R Contractors,* in reversing the lump-sum award, we stated, in part:

We are especially cognizant that the two primary purposes of the statutory scheme for periodic payments are: (1) to provide for regular payments to replace the normal income the covered employee would have received had he/she not been injured; and (2) to avoid, by making payments periodically, the wasting of a claimant's means of support in order

to prevent the claimant from becoming a burden on society. The lump-sum award in the case at bar, on the evidence heard, patently conflicts with the latter stated purpose. *Id.* at 822–23, 614 A.2d 1035.

We are thus unable to conclude that it is, or was, the legislative intent to encourage lump-sum payments. Instead, it appears clear that periodic payments, rather than lump-sum awards are generally preferred. Were it our function to establish public policy in regard to workers' compensation payments, we would adopt that policy that would extend periodic payments rather than compress them into lump sums. Thus, in our view, the Commission's practice of limiting attorney fee awards to the initial $45,000 is generally appropriate. Moreover, as we see it, it is the Legislature's function to establish that policy and its operative entity, in this case, is the Commission.

## B.

We have no way of knowing whether there is a surplus, or paucity, of able and competent attorneys willing to practice in the area of workers' compensation under the Commission's current policy as to fees. The administrative agency, the Commission, is in a better position to know this. Moreover, it is much better able to assess, on a continuing basis, whether its fee guidelines offer sufficient inducements to attract the requisite number of competent attorneys. Thus, whether the cap should be increased is not, primarily, a judicial function. It is for the Legislature, or its creation, the administrative agency, in this case the Commission, to consider. In setting fee awards, the Commission is concerned not only with fairness but, more important, with its ultimate concerns for the welfare of the claimants and the State's interest in keeping workers off public assistance.

The Commission is generally better able to juggle the interests of claimants and how those interests are affected by the fairness, or lack of fairness, in the awarding of fees. In that process, the Commission may always consider that lump-

sum conversions of periodic lifetime payments may not be conducive to meeting the State's other goal of reducing the utilization of public assistance by injured workers. As we perceive it, the Commission's stance in respect to its present method of computation of fees achieves one of the purposes of the statute. We cannot say that it abused its discretion.

If the method of attorney fee computation in workers' compensation cases is to be changed, it is more appropriately done by the Commission, the General Assembly, or, perhaps, by a policy statement by the Court of Appeals.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**