724 A.2d 645

**ENGEL & ENGEL, P.A.**

**v.**

**Bruce INGERMAN et al.**

**No. 59, Sept. Term, 1998.**

Court of Appeals of Maryland.

Feb. 19, 1999.

44

Jacquelyn M. Kramer (Engel and Engel, P.A., on brief), Baltimore, for petitioner.

Robert Taylor, Jr. (Ingerman & Horowitz, L.L.P., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and RODOWSKY, CHASANOW, RAKER, WILNER, CATHELL and RAYMOND G. THIEME, Jr. (Specially Assigned), JJ.

CHASANOW, Judge.

The primary issue in this appeal concerns the jurisdiction of the Workers' Compensation Commission (Commission) over

a dispute between attorneys for legal fees related to a worker's claim before the Commission. We conclude that the Commission's jurisdiction over attorney's fees under Maryland Code (1991 Repl.Vol.), Labor and Employment Article, § 9–731 is not exclusive where the Commission rendered a decision approving the appropriate fee for legal services and the dispute involves an alleged contract about how that fee subsequently should be divided among attorneys who claim a portion of the fee.

## I.

The basic facts in this case are not contested. The dispute is between two law firms over the division of $12,500 in attorney's fees approved by the Commission in 1995. The Commission's approval related to the $200,000 settlement of a claim filed on behalf of Vonnie Colson, an employee of Owens–Corning Fiberglass, for work-related injuries to his back.

Both Appellant and Appellee represented Colson in pursuit of his claim for workers' compensation benefits before the Commission during the years 1989 to 1995. Appellant Engel & Engel, P.A. (Engel) represented Colson from 1989 to 1992. In 1992, Colson discharged Engel and retained Ingerman & Horwitz (Ingerman), the Appellee in this case, as new counsel. The evidence of the alleged fee-sharing contract is based on a letter sent by Engel on December 3, 1992, to Ingerman. The letter mentions Engel's transfer of Colson's file to Ingerman and purports to confirm an agreement between the two law firms of a 50–50 division of attorney's fees generated as a result of Colson's claim. In relevant part, the letter stated:

> "It is my understanding that due [to] the extensive work undertaken by our office in these matters, you have agreed to split any fees recovered in these matters on a 50–50 basis. You have also agreed to reimburse our office for the expenses incurred in the appeal that was tried before the Circuit Court for Baltimore City as it relates to [Colson's] injury. Our expenses for same total $116.00."

On January 27, 1993, in apparent response to Engel's letter, Ingerman sent Engel a check for the $116.00 in expenses. A brief letter sent with the check did not dispute the terms of Engel's December 3 letter. Ingerman then served as Colson's counsel until the settlement was reached in 1995. While Ingerman was retained as Colson's counsel, Philip Sturman was responsible for most of the work on the Colson case. Sturman's work on the case initially took place as an employee of Ingerman but later, after he left the firm to begin a solo practice, as a subcontractor to Ingerman pursuant to a written agreement under the terms of which Sturman was paid an hourly rate. Sturman submitted to Ingerman monthly bills for his work, which Ingerman paid. Sturman was the individual ultimately responsible for negotiating the settlement with Owens–Corning.

After the settlement was reached, Ingerman submitted a petition, drafted by Sturman, to the Commission for attorney's fees totaling $12,500, which were approved. Engel then sought 50 percent, or $6,250, of the fees pursuant to the agreement stated in his December 3, 1992, letter. Engel filed suit in the District Court of Maryland sitting in Baltimore City after Ingerman refused Engel's repeated demands for $6,250. The District Court denied Ingerman's motion for summary judgment, which contended that the court had no jurisdiction to hear a case concerning attorney's fees arising out of a workers' compensation claim. Based on testimony from witnesses for both parties, the District Court judge, Alan M. Resnick, concluded that the correspondence indicated that a 50–50 fee-sharing agreement had been reached and entered a judgment on the merits for Engel for $6,250 plus costs.

On Ingerman's appeal, the circuit court reversed the District Court's decision without reaching the merits of Engel's claim. The circuit court found that, although no cases addressed Ingerman's jurisdictional defense, "the language . . . in the various cases appears to suggest that the legislative policy [requiring Commission approval of attorney's fees related to claims before the Commission] is an all encompassing preemption of the field of attorney's fees." That court there-

fore concluded as a matter of law that the District Court had no jurisdiction to entertain Engel's suit and that Engel should seek recovery at the Commission. The jurisdictional issue is now before us on certiorari review from the circuit court's decision.[1] We will provide more facts as necessary in the analysis that follows.

## II.

### A.

The statute conferring jurisdiction on the Commission over attorney's fees, Md.Code (1991 Repl.Vol.), Labor and Employment Art., § 9–731,[2] states as follows:

"(a) *In general.*—(1)  Unless approved by the Commission, a person may not charge or collect a fee for:

(i) legal services in connection with a claim under this title;

(ii) medical services, supplies, or treatment provided under Subtitle 6, Part IX of this title;  or

(iii) funeral expenses under Subtitle 6, Part XIII of this title.

(2) When the Commission approves a fee, the fee is a lien on the compensation awarded.

(3) Notwithstanding paragraph (2) of this subsection, a fee shall be paid from an award of compensation only in the manner set by the Commission.

\*     \*     \*

(c) *Attorney's fees—Administrative review.*—On application of a party, the Commission may:

---

1.  Engel also argues that the circuit court erred by failing to grant its motion to dismiss based on Ingerman's failure to properly file a transcript of the District Court proceedings.  We need not address this contention.

2.  Unless otherwise indicated, hereinafter all statutory references are to Maryland Code (1991 Repl.Vol. & 1998 Supp.), Labor and Employment Article.

(1) hear and decide any question concerning legal services performed in connection with a claim;  and

(2) order a person who received a fee for legal services to refund to the payer any part of the fee that the Commission may find to be excessive.

(d) *Same—Enforcement and appeal.*—An order of the Commission regulating payment or refund of payment for legal services may be enforced or appealed in the same manner as a compensation award."

The attorney's fee provisions were originally enacted in 1957 as § 57 of Article 101 and their recodification as § 9–731 occurred in 1991 without any substantive changes relevant here.  As a result, throughout this opinion our references to Maryland Code (1957, 1964 Repl.Vol., 1977 Cum.Supp.), Article 101, § 57 should be viewed as synonymous with § 9–731.

In the typical workers' compensation case, the Commission will approve the legal fee for the attorney's work upon approving an award to a worker-claimant.  For guidance as to the appropriate fee, the Commission has promulgated a schedule of fees.  Code of Maryland Regulations (COMAR) 14.09.01.25. The schedule establishes maximum amounts for attorney's fees based on the extent of the disability and the amount of the award.  *Id.* The regulations also allow for a claimant's attorney to file a petition with the Commission for a fee in excess of the fee schedule.  COMAR 14.09.01.24(B)(describing necessary contents of petition);  COMAR 14.09.01.25(B)(2)(stating that the Commission "may approve an attorney's fee in excess of the limits set forth in this section only if exceptional circumstances are shown").

In one of our leading cases interpreting Md.Code (1957, 1964 Repl.Vol., 1977 Cum.Supp.), Art. 101, § 57, *Feissner v. Prince George's Co.,* 282 Md. 413, 384 A.2d 742 (1978), we addressed how an award of attorney's fees under that section operates as a lien on the claimant's recovery.  The appellant in *Feissner* served as an attorney for individual claimants and was awarded attorney's fees by the Commission.  Prince George's County, the employer, refused to pay the fees be-

cause of the statutory offset provisions that then applied under former Md.Code (1957, 1964 Repl.Vol., 1977 Cum. Supp.), Art. 101, § 33(c) and (d), which limited a claimant's recovery when the claimant's pension or other benefits exceeded the compensation benefits.[3] The circuit court ordered the County to pay the attorney's fees, and the County appealed. The Court of Special Appeals reversed the circuit court, holding that the offset provisions of § 33 extinguished the compensation award granted by the Commission and precluded the creation of the lien on the compensation benefits for payment of legal fees. We affirmed, holding that when the Commission approves attorney's fees under Md.Code (1957, 1964 Repl.Vol., 1977 Cum.Supp.), Art. 101, § 57, the award operates as a lien on the worker's claim and is not a separate cost to be paid by the employer. *Feissner*, 282 Md. at 418–19, 384 A.2d at 745–45. *See also* § 9–731(a)(2)("When the Commission approves a fee, the fee is a lien on the compensation awarded.").

We explained in *Feissner* that:

"[U]nder the Maryland statutory scheme, the payment of legal fees does not become an independent obligation of the employer or his insurer, but instead remains at all times the personal responsibility of the claimant. Thus legal fees are not among the enumerated benefits available to the claimant from his employer under the workmen's compensation laws of this state."

282 Md. at 418, 384 A.2d at 745. · *See also Chanticleer Skyline Rm. v. Greer*, 271 Md. 693, 700, 319 A.2d 802, 806 (1974)(explaining that the attorney's fee provision does not operate as an add-on to the compensation award that the employer must pay, but instead provides that "a single award of compensation is made" to the claimant). Thus, our cases clearly establish that, under § 9–731, the claimant remains responsible for the attorney's fees generated in pursuing his or her claim.

---

3. Former Md.Code (1957, 1964 Repl.Vol., 1977 Cum.Supp.), Art. 101, § 33 is currently codified at Md.Code (1991 Repl.Vol., 1998 Supp.), Labor and Employment Art., § 9–610.

B.

Because this case requires us to determine the reach of the statute conferring jurisdiction to the Commission over attorney's fees, we pause here to examine the context of that statute and the objectives the legislature sought to achieve through its enactment. As we observed in *Kaczorowski v. Mayor of Baltimore*, 309 Md. 505, 525 A.2d 628 (1987), when interpreting statutory language the

> "legislative purpose is critical, that purpose must be discerned in light of context, and that 'statutes are to be construed reasonably with reference to the purpose to be accomplished....' The purpose, in short, determined in light of the statute's context, is the key."

309 Md. at 516, 525 A.2d at 633 (quoting *Potter v. Bethesda Fire Dep't*, 309 Md. 347, 353, 524 A.2d 61, 64 (1987), in turn quoting *State v. Fabritz*, 276 Md. 416, 421, 348 A.2d 275, 278 (1975), *cert. denied*, 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976)).

We previously have observed that the legislative act creating the Commission was

> "designed to protect workers and their families from hardships inflicted by work-related injuries. More particularly, it is designed to provide workers with compensation for loss of earning capacity resulting from accidental injury, disease or death arising out of and in the course of employment, to provide vocational rehabilitation, and to provide adequate medical services."

*Queen v. Agger*, 287 Md. 342, 343, 412 A.2d 733, 734 (1980). It is in light of the legislature's goal of adequately compensating injured workers that we must interpret the attorney's fee provision of § 9–731.

As in litigation generally, in a workers' compensation case the party seeking compensation is responsible for his or her own attorney's fees. *See supra* Part II. A. Since workers' compensation law is designed to provide financial assistance to the injured or disabled worker in lieu of lost wages, the legislature recognized that the purpose of the law would

be subverted if a worker's recovery were dissipated as a result of excessive fees incurred in recovering the compensation. As Professor Larson has observed, when the general rule that a party must pay his or her own legal fees

"is superimposed upon a closely calculated system of wage-loss benefits, a serious question arises whether the social objectives of the legislation may to some extent be thwarted. The benefit scales are so tailored as to cover only the minimum support of the claimant during disability. There is nothing to indicate that the framers of the benefit rates included any padding to take care of legal and other expenses incurred in obtaining the award." (Footnote omitted).

3 ARTHUR LARSON, LARSON'S WORKMEN'S COMPENSATION LAW § 83.11, at 15–1271 (1989). *See also Chanticleer Skyline Rm., supra.* Thus, in *Feissner* we recognized that

"a serious risk exists that the purpose of the compensation award will be frustrated if benefits are exhausted by payment of excessive legal fees. Consequently, the primary function of [Md.Code (1957, 1964 Repl.Vol., 1977 Cum. Supp.), Art. 101,] § 57 is to protect against this possibility by authorizing the Commission to adopt appropriate safeguards." (Footnote omitted).

282 Md. at 418, 384 A.2d at 746. Similarly, in *Chanticleer Skyline Rm.,* we observed that the provision for attorney's fees is intended to

"prohibit the dissipation of an employee's compensation through the payment of excessive legal fees out of the award by giving the Commission the power to regulate when and how much remuneration an attorney who represents a claimant in [workers'] compensation litigation is to receive from the employee for legal services rendered to him."

271 Md. at 699–700, 319 A.2d at 805. *See also Stevens v. Rite-Aid,* 340 Md. 555, 564 n. 10, 667 A.2d 642, 646–47 n. 10 (1995)(quoting *Chanticleer Skyline Rm.*); *cf. Queen,* 287 Md. at 344, 412 A.2d at 734 (holding that a health care provider

may not enforce a contract the "result of which is to require an eligible injured employee to pay an amount greater than the amount approved by the Commission and paid by the employer or its insurer for services which the Commission requires the employer to provide"). Therefore, consistent with the purpose of workers' compensation law generally, a primary objective behind the attorney's fee provision is to afford workers some degree of protection that their compensation will not be unduly diminished by excessive costs associated with obtaining recovery.

## C.

While claimants must be protected from exorbitant legal fees, there also exists a need to ensure that workers are able to obtain competent counsel to pursue their claims. Attorney's fees should not be so large as to be excessive, but they also should not be so low as to make representing claimants undesirable to the legal practitioner. 3 ARTHUR LARSON, LARSON'S WORKMEN'S COMPENSATION LAW § 83.16, at 15–1347–1349 (1989)(stating that attorney's fees may not be fixed so low as to deny claimants' effective legal representation). *See also Mitchell v. Goodyear Service Store*, 63 Md. App. 426, 434, 492 A.2d 984, 988 (1985)( "[T]he Commission may not set fees so cheeseparingly as to deprive claimants of the practical ability to obtain competent counsel."), *aff'd* 306 Md. 27, 506 A.2d 1178 (1986); *City of Baltimore v. Bowen*, 54 Md.App. 375, 386, 458 A.2d 1242, 1249 (1983)(same). If the legislature itself had inflexibly established attorney's fees for workers' compensation cases through statutory enactment, a risk would have been created that the fees would be set too low so as to deny workers adequate legal representation. Thus, the legislature sought to balance the need to protect claimants from excessive legal fees against the need of workers to retain competent legal representation to pursue their claims. The delegation to an administrative agency with special expertise in the law of workers' compensation, *i.e.*, the Commission, was the best way to effectuate the balance of these potentially conflicting goals. Thus, the legislature

granted the Commission broad authority over attorney's fees in workers' compensation cases, including the power to promulgate rules governing such fees. *See* § 9–309(a)(granting the Commission the power to "adopt regulations" in furtherance of its statutory mandates); *Feissner*, 282 Md. at 418, 384 A.2d at 746 (discussing the Commission's broad authority to set attorney's fees); *Edmond v. Ten Trex*, 83 Md.App. 573, 581, 575 A.2d 1267, 1270–71 (1990)(discussing the Commission's power to promulgate regulations). Furthermore, the Commission has relatively greater flexibility than the legislature for responding to the changing economic circumstances by lessening or increasing the attorney's compensation. The Commission has authority to modify its fee schedule, and its current fee schedule, which spans four pages of COMAR, gives the agency wide latitude in determining the appropriate fee size depending on the nature of the claim. COMAR 14.09.01.25. The agency is therefore uniquely positioned to conduct the delicate balance of protecting claimants and assuring adequate compensation.

▮ The role of the courts with respect to Commission-approved fees is much more limited. The courts retain a supervisory role over the Commission's approval of legal fees to guard against agency abuses of discretion and arbitrariness, but the courts may not substitute their own judgment as to the appropriate fee for the judgment of the Commission. As the Court of Special Appeals has observed: "The agency's expertise in setting attorney's fees in workmen's compensation cases is not to be undermined." *Mitchell*, 63 Md.App. at 433, 492 A.2d at 988. *See also Rogers v. Welsh*, 113 Md.App. 142, 686 A.2d 1107 (1996)(upholding Commission's decision not to exercise its discretion to award attorney's fees in excess of the regulatory guidelines); *Workers' Compensation Comm'n v. May*, 88 Md.App. 408, 416, 594 A.2d 1232, 1236 (1991), quoting *Bowen*, 54 Md.App. at 386, 458 A.2d at 1242 ("The amount of [attorney's] fees awarded is a decision within the sound discretion of the Commission and 'it is not the province of the courts to constrain the legitimate exercise of the Commission's dis-

cretion.' ");  *Ten Trex,* 83 Md.App. at 578–80, 575 A.2d at 1269–70 (upholding Commission's award of attorney's fees).

Keeping in mind the purposes of the Workers' Compensation Act generally and the attorney's fee provision specifically, as well as the Commission's special expertise in these areas, we now turn to the jurisdictional question posed by the instant case.

### III.

This case concerns a dispute over the division of a fee that has already been approved by the Commission, rather than a dispute as to the Commission-approved fee itself.  Thus, this appeal requires us to consider the scope of § 9–731, which gives the Commission jurisdiction over attorney's fees made "in connection with" a claim filed before the Commission.

Ingerman contends that Engel should have pursued his claim for 50 percent of the attorney's fee before the Commission and not the courts, a position with which the circuit court agreed.  Ingerman argues that both the plain meaning of the statute and a reading of the case law give the Commission exclusive jurisdiction over any dispute involving legal fees for services rendered in the course of pursuing a worker's claim for compensation.  We disagree.  We initially explain why we believe that the plain words of the statute do not give the Commission exclusive jurisdiction and why the appellate decisions of this State fail to resolve the jurisdictional question posed in this appeal.  We then look to the legislature's purpose and statutory scheme to determine how § 9–731 should apply in the instant case.

### A.

We begin by examining the text of § 9–731 to determine whether its meaning is plain and unambiguous.  "If the language of the statute is plain and clear and expresses a meaning consistent with the statute's apparent purpose, no further analysis is ordinarily required."  *Gargliano v. State,* 334 Md. 428, 435, 639 A.2d 675, 678 (1994); *see also Prince*

*George's County v. Vieira,* 340 Md. 651, 658, 667 A.2d 898, 901 (1995). Ingerman contends that subsection (a)(1) plainly covers an attorney's attempt to charge or collect a portion of a fee already collected by another attorney. We conclude, however, that the statutory language accurately reflects the legislature's intention of conferring to the Commission jurisdiction over disputes between attorneys and *parties* to compensation claims, *i.e.,* between attorneys and claimants or employers, but not over disputes as to fee-sharing agreements among attorneys.

Section 9–731(a)(1) states in pertinent part that: "Unless approved by the Commission, a person may not charge or collect a fee for: (i) legal services *in connection with* a claim under this title." (Emphasis added). These words provide no indication that the Commission must approve the payment of monies by one attorney to another attorney which, coincidentally, relate to a workers' compensation claim. Under such circumstances the attorney seeking payment is not charging or collecting a fee from a claimant's compensation; rather, that attorney is seeking to enforce a contractual obligation. Thus, we reject Ingerman's argument that, because the statute "does not make exceptions for cases which do not affect the overall amount of the lien on the Claimant's award," the Commission has exclusive jurisdiction over the fee-sharing dispute. Since the fee-sharing dispute does not involve charging or collecting a fee from a claimant, no statutory "exception" is needed to conclude that jurisdiction properly lies with the District Court.

The only possible ambiguity that may be read into subsection (a)(1) stems from its failure to expressly indicate *from whom* a person may not charge or collect a fee without Commission approval. Perhaps, ideally, the legislature would have indicated in specific terms *from whom* one may not charge or collect a fee, but such additional language seems unnecessary when one considers the implications of Ingerman's argument. Ingerman's contention presumes that attorney A (here, Engel) may not attempt to collect a portion of a fee from attorney B (Ingerman) without Commission approval,

if the fee earned by attorney B was for compensation for a claim before the Commission and attorney A's services included work on the worker's claim. Thus, Ingerman's argument would apparently encompass any lawyer's claim against any other lawyer if there is any connection to a claim before the Commission.

This argument is belied by the facts of this case. Ingerman does not dispute that Philip Sturman, the former employee of the firm who later worked as a subcontractor, performed much of the work on the Colson case. Sturman was paid on an hourly basis and performed most, if not all, of the work on Colson's case, following Ingerman's involvement, including negotiating the ultimate settlement and drafting the petition for legal fees. It was Ingerman, however, who was named counsel and whose name was on the petition for attorney's fees filed with the Commission. Ingerman's petition did not mention Sturman's role or the fact of his compensation for work on the Colson case. Ingerman paid Sturman for his services on the Colson case pursuant to their contract. Therefore, under Ingerman's broad reading of the statute, Sturman, with Ingerman's assistance, would have violated the statute by "charg[ing] or collect[ing] a fee ... for legal services in connection with a claim." Section 9–731 requires that persons obtain Commission approval of all charges or collections in connection with a claim; since the statute does not distinguish between contested and uncontested charges or collections, there is little to differentiate the Sturman–Ingerman contractual relationship from the relationship alleged by Engel. The fact that Sturman's contract was concurrent with Ingerman's representation of Colson, while Engel's was successive, is too slim a reed to distinguish the two situations and a distinction not available from even an extremely liberal reading of the statute.

Furthermore, if Ingerman had refused to pay Sturman, Sturman would not be precluded from filing suit in the courts for Ingerman's breach of their contract because of the mere fortuity that the contract involved services rendered in the pursuit of a claim under the Commission's jurisdiction. It

would be even clearer that the courts have jurisdiction over the breach of contract if, in the posed hypothetical, Sturman's contract also involved services for working on matters unrelated to work before the Commission. Surely we would not require Sturman to pursue his claim for breach of contract in two different arenas.

Like the hypothetical situation involving Ingerman's refusal to pay Sturman, Engel's claim is for breach of a contract. Instead of a contract for payment by the hour, the alleged contract was "to split any fees recovered in these matters on a 50–50 basis." It is insignificant for our purposes that one contract involved the transfer of Colson's case from Engel to Ingerman and the other involved payment for work performed on Colson's case as a subcontractor; in either case, under Ingerman's overly broad reading of § 9–731, both situations would involve fees for "legal services in connection with a claim." Ingerman's plain language argument would therefore lead to an illogical result. A much more reasonable interpretation of the express language of § 9–731 would limit the Commission's exclusive jurisdiction to attempts to collect or charge fees *from claimants* in connection with a claim before the agency.

A case that sheds further light on the "in connection with" language of § 9–731 is *Livingston Fire Pro. v. Hubbard,* 45 Md.App. 504, 414 A.2d 5 (1980), *aff'd, Hubbard v. Livingston Fire Pro.,* 289 Md. 581, 426 A.2d 901 (1981). In that case the injured employee, Hubbard, was awarded compensation for permanent disability, but he subsequently recovered a judgment larger than his disability compensation from a third-party tortfeasor. The tort recovery operated to forfeit his right to future compensation payments. *See* § 9–902(c)(providing injured employee the right to pursue third-party claim and for the allocation of any recovery from that claim). Hubbard then petitioned the Commission for attorney's fees to which he would have been entitled if the third-party claim had not been filed. The Commission denied the request, but on appeal the circuit court reversed.

The Court of Special Appeals then reversed the circuit court. The court rejected Hubbard's contention that Md.Code (1957, 1964 Repl.Vol., 1977 Cum.Supp.), Art. 101, § 57 gives the Commission jurisdiction over payment or allocation of legal fees. *Livingston Fire Pro.,* 45 Md.App. at 510, 414 A.2d at 8. It held that, although the language of the statute gave the Commission jurisdiction over legal fees "rendered in connection with any claim under this article," the Commission had no jurisdiction for "counsel fees in connection with a third party claim as the pertinent language of the section is specifically limited to legal fees 'rendered in connection with any claim under this article.' " *Livingston Fire Pro.,* 45 Md.App. at 511, 414 A.2d at 8 (quoting then Md.Code (1957, 1964 Repl.Vol., 1977 Cum.Supp.), Art. 101, § 57 and current § 9–731). We affirmed the decision of the intermediate appellate court. *Hubbard v. Livingston Fire Pro.,* 289 Md. 581, 426 A.2d 901 (1981).

The instant case is analogous to Hubbard's request to the Commission for attorney's fees relating to the third-party claim. In *Hubbard,* a broad reading of the "in connection with" language of § 9–731 would have given the Commission jurisdiction to rule on attorney's fees, since Hubbard initially had been awarded compensation in a claim before the Commission and the tort recovery effectively operated as a substitute for the compensation claim for which the Commission had already approved attorney's fees. Nonetheless, the payment from a third party ended the Commission's role in the case, including its jurisdiction over attorney's fees. In the same way that the recovery from the third-party tortfeasor operated to divest the Commission from jurisdiction over Hubbard's request for attorney's fees in *Hubbard,* the Commission's order granting Ingerman's request for fees in this case operated to divest the Commission of exclusive jurisdiction over the legal fees involved in preparing Mr. Colson's compensation claims. Arguably, the attorney's fees sought by counsel in *Hubbard* are even more strongly "connected" with the worker's claim than in the instant case, since those fees stemmed from a tort action that resulted in a recovery that actually

substituted for the compensation the claimant was due to receive under the Commission's previous order. In sum, in both cases an overly broad reading of the "in connection with" language would give the Commission exclusive jurisdiction over both claims for fees, but a much more logical reading limits the scope of the statute to requests for attorney's fees directly arising from a worker's claim. In essence, the scope of § 9–731 does not reach to collateral matters, and particularly when those matters are unrelated to the purposes of § 9–731, which will be discussed in more detail below. *See infra* Part III.C.1.

## B.

We also disagree with Ingerman's contention that the Maryland cases interpreting § 9–731 and its predecessor, Md.Code (1957, 1964 Repl.Vol., 1977 Cum.Supp.), Art. 101, § 57, indicate that the Commission has exclusive jurisdiction over a dispute concerning the division of legal fees recovered in a worker's compensation case. We agree with Ingerman that the language in some of our cases refers in broad terms to the Commission's regulation of attorney's fees. For example, in *Chanticleer Skyline Rm., supra,* we observed that through the enactment of the attorney's fee provision "the Legislature has attempted to formulate a comprehensive mechanism by which the award of an attorney's fee is regulated." 271 Md. at 699, 319 A.2d at 805. The circuit court relied on similar case law references to the Commission's broad authority, concluding that the "language of the Court of Special Appeals in the various cases appears to suggest that the legislative policy is an all encompassing preemption of the field of attorney's fees."

However, as the circuit court and the parties to this appeal apparently recognized, no appellate decisions in Maryland express a view on whether the legislature intended that the Commission's jurisdiction over the regulation of attorney's fees in workers' compensation cases preempts, as the circuit court phrased it, "something as remote as [the subsequent distribution of a Commission-approved attorney's fee]." Thus, the question we face on this appeal is a matter of first

impression. We may not extract language from our cases considering the propriety of Commission-approved fees and apply that language to the entirely different context of a dispute among attorneys over a fee that the Commission has already approved.

Our review of the case law of other jurisdictions uncovered only one case in which a court considered the jurisdiction of the state workers' compensation agency to entertain a dispute between attorneys over the distribution of the fee. *See Feldman v. Edwards,* 107 Ga.App. 397, 130 S.E.2d 350 (1963). Like the instant case, *Feldman* involved a dispute between attorneys—Edwards, who represented three claimants in workers' compensation proceedings, and Feldman, whom Edwards had employed as associate counsel. The State Board of Workmens' Compensation approved the legal fee contracts between the claimants and Edwards. Feldman then filed a petition with the state board asking that it direct Edwards to pay him one-half of the counsel fee approved. After the Board refused to take action on his petition, Feldman filed suit in a Georgia superior court assigning error to the Board's refusal to have a hearing to determine if he was entitled to a part of the attorney's fees. The superior court dismissed Feldman's lawsuit for lack of jurisdiction. On appeal, the Georgia appellate court held that the

> "State Board of Workmen's Compensation has authority to examine and approve contracts between claimants and their counsel as to the amount of attorneys fees but it has no authority . . . to examine and approve contracts between attorneys as to the division of their fees when associated to represent claimants. The only contracts before the Board were the contracts between Edwards and the claimants and such were the only contracts that the board could examine." (Citations omitted).

*Feldman,* 130 S.E.2d at 350–51. Thus, addressing a very similar situation as that posed in the instant case, the Georgia court concluded that once the state board approved a contract for legal fees related to a worker's claim, the board no longer had jurisdiction to settle a dispute over how the fees should be

distributed among feuding attorneys. Although we find the reasoning of the Georgia court persuasive, our holding need not reach as far in the instant case. In *Feldman*, the court addressed whether the state board had *any* jurisdiction over the fee dispute between attorneys; in this case we address, and reject, Ingerman's contention that the Commission's jurisdiction over the fee dispute is *exclusive*.

### C.

### 1.

Assuming, *arguendo*, that the scope of the "in connection with" language of § 9–731 is ambiguous, we will now consider the present conflict in light of the legislature's intent and purpose in enacting the statute. We believe that the Commission accomplished the legislative purpose of § 9–731 once it approved Ingerman's petition for attorney's fees. The Commission's approval of Ingerman's petition for legal fees related to the settlement of Colson's claim fulfilled the statutory purposes described above. *See supra* Part II. C. The approval protected Colson's compensation and helped to ensure reasonable payment for the legal work involved. How the payment for legal work is subsequently distributed is not pertinent to the legislature's purpose of protecting workers and ensuring that claimants are able to find adequate legal representation. Ensuring that competent legal counsel is available to represent claimants is accomplished by the Commission's task of approving legal fees that are reasonable in total; whether that total amount approved is subsequently kept by one attorney who worked alone, or is distributed among a number of attorneys who participated in the matter, bears little impact on the policies behind § 9–731. Moreover, to hold, as Ingerman asks us, that the Commission has exclusive jurisdiction over disputes involving the distribution of Commission-approved fees would involve an unparalleled transfer of power from the judiciary to an administrative agency. For example, as described above, it would place before the Commission any dispute over the contract for services between Ingerman and its subcontractor Sturman.

The legislature could not have intended such a broad expansion of the Commission's jurisdiction to entertain breach of contract claims that generally fall within the province of the courts.

Furthermore, the Commission has no special expertise that would serve as a policy basis for conferring to it exclusive jurisdiction over the existence of, or a disagreement regarding, the terms of a fee-sharing contract between attorneys. The Commission simply has no special knowledge or skills relevant to ordinary contract claims or equitable claims for *quantum meruit.* Indeed, the dispute in this case is entirely unrelated to the Commission's mandate of "protect[ing] workers and their families from hardships inflicted by work-related injuries." *Queen,* 287 Md. at 343, 412 A.2d at 734. Just as if there had been a contractual dispute between doctors over the division of medical fees earned as a result of services rendered in connection with a claim before the Commission, the total of which had been approved by the Commission, no policy or purpose would be served in refusing the doctors' access to the courts and holding that the Commission had exclusive jurisdiction over the dispute.

Finally, the ethical considerations often involved in disputes over attorney's fees provide further reason for our holding that jurisdiction in this case properly lies in the courts. Attorney's fee disputes often involve ethical considerations that are properly considered by a court of law and over which the Commission has no special expertise and no jurisdiction. *See* Maryland Rule of Professional Conduct 1.5 (governing lawyer's fees); *Post v. Bregman,* 349 Md. 142, 707 A.2d 806 (1998)(holding that violation of Maryland Rule of Professional Conduct covering the splitting of fees among attorneys could make fee-splitting arrangement unenforceable).[4] To extend

---

4. Ingerman does not contend that recovery from Engel would contravene any ethical standards. From the transcript of the District Court proceeding, it is apparent that Engel did a substantial amount of work for Colson before he was discharged. Asked on direct examination what types of services he performed for Colson, Mr. Engel responded:

the Commission's jurisdiction beyond approval of the total fee might intrude upon the need of the judiciary to regulate attorney professionalism.

2.

Not only do we fail to see any policy basis for reading into § 9–731 exclusive jurisdiction of the Commission over a fee-sharing dispute among attorneys, we believe that a holding resulting in Commission review of the substance of Engel's claim could subvert the purposes of § 9–731 and the Commission's legitimate interest in the finality of its decisions.

The Commission would have one of two choices if it were to entertain Engel's request for a percentage of the legal fees relating to Colson's claim and find in favor of his request, as did the District Court. First, it could find the claimant, Colson, liable for additional fees payable to Engel. Under this scenario, the imposition of new fees would reduce Colson's recovery and, thus, directly and adversely implicate the purpose behind § 9–731 of protecting the claimant's recovery from diminution by excessive legal fees. Although it had earlier approved a reasonable attorney's fee for the costs of the case, the Commission would further reduce Colson's recovery by awarding an additional attorney's fee, this time payable

---

"[T]he initial preparation of the complaint, the setting up and verifying medical care and treatment, accumulation of the medical records. The matter was contested by the employer and insurer as a result of their having videotapes of Mr. Colson removing a tire from his trunk and changing the tire. They believed that he was not involved in an accident related injury that had causally related problems to his back. That was lost at the Commission, that was appealed, and it was tried before a jury in Baltimore County, Judge Dana Levitz. And we prevailed on all issues, the issues for medical treatment, accidental injury, causal relationship, and temporary total disability. And that was prevailed upon, and the matter was then remanded back to the Commission, for a future hearing on nature and extent."

Indeed, when the District Court judge found in favor of Ingerman he noted that he was "appalled" at the conduct of the lawyers in the case and observed that Ingerman's recovery was quite substantial given that Sturman, as a subcontractor to Ingerman, earned only $3,000 even though he performed all the work for which Ingerman was compensated.

to Engel. It is apparent from oral argument that, should this dispute be placed once again before the Commission, Ingerman would in fact claim that any fees owed to Engel should come from Colson and not Ingerman. Ingerman claimed at argument that its petition for attorney's fees did not include any work performed by Engel. It is clear, however, that the fee approved by the Commission was based on the $200,000 settlement of Colson's claim, which was the culmination of all the attorneys' work, including that of Engel and Sturman, and upon a Commission finding that "exceptional circumstances" justified a fee in excess of the regular fee schedule.[5] *See* COMAR 14.09.01.25(B)(2). Ingerman concedes that its petition to the Commission for approval of fees failed to indicate that additional fees might be sought by other attorneys. Furthermore, Ingerman's argument is undermined by the fact of Ingerman's payment to Sturman as a subcontractor, even though Sturman also had not been named in the fee petition (particularly given that he had prepared the petition). Thus, if we were to hold as Ingerman would have us, we would risk undermining the clear purpose of § 9–731 by exposing Colson's recovery to further diminution after a reasonable fee for all the legal work giving rise to the settlement had already been approved.

Under the second scenario, the Commission could find that the fees owed by Ingerman to Engel should be taken from the total fee that it had previously approved. Presumably, the Commission would then have to review the nature of the work involved in preparing Colson's claim to determine the total amount of work and which attorney was responsible for the work. Since the Commission's original approval of the total amount of attorney's fees already involved a review of the work performed in preparing and litigating Colson's case, the Commission would have to revisit the same record a second time.

---

5. The record does not contain any order or other documentation of the Commission's approval of the fee, but the approval is not contested by either of the parties.

Like courts, administrative agencies have an interest in the finality of their decisions. *Cf.* II KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 13.3, at 248 (1994)("The policy in favor of repose that underlies application of res judicata, or claim preclusion, to judicial decisions applies with equal strength to agency adjudications.") In approving the attorney's fees in this case the Commission found them reasonably related to the services rendered; thus, the Commission's task should be complete, and it should not be required to reopen its examination of the record to consider a contract collateral to the overall fee itself. The Commission had no knowledge that Ingerman's petition was subject to either Engel's or Sturman's claim, and to require it to reopen the matter in order to entertain such claims would impose a significant burden on the agency. Indeed, it would remain unclear under this scenario what, if anything, would prevent a new attorney (*e.g.*, one who alleged a fee-sharing agreement with Engel) from seeking to reopen the case a third time.

On the other hand, by allowing the courts to exercise jurisdiction over the alleged fee-splitting agreement, our holding leaves as final the Commission's approval of the total attorney's fees for which Colson is liable and it places before the courts what is, in reality, a contractual dispute over the distribution of a fee previously approved by the Commission. Indeed, we believe that little distinguishes the context of this case from *Vogelhut v. Kandel,* 308 Md. 183, 517 A.2d 1092 (1986), which also involved a lawsuit filed by a discharged attorney against a successor attorney for a percentage of the fee recovery. The single fact that the fee dispute in this case stems from a claim that had been before the Commission does not detract from the principles of contract law and the ethical considerations that are relevant to disputes over fee-sharing agreements, and neither does that fact divest the courts of jurisdiction over the dispute.

## IV.

In sum, this matter involves an alleged contract between a discharged attorney and a successor attorney governed by the

contract law principles we set forth in *Vogelhut, supra.* The language of § 9–731 supports this interpretation, and Maryland case law does not contradict it. To hold otherwise would not further the objectives of § 9–731 and of workers' compensation law generally; rather, such a holding would place those purposes at a substantial risk of being undermined. Having fulfilled its statutory mandate of protecting a claimant's compensation from diminution from excessive attorney's fees and providing adequate compensation for the services rendered, the Workers' Compensation Commission should not be burdened with a matter over which it has no policy interest nor any special expertise.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO ABIDE THE RESULT.**